USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 9/9/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARVIND GUPTA,

      Plaintiff,

v.

HEADSTRONG, INC., GENPACT
LIMITED, and SECRETARY OF THE U.S.
DEPARTMENT OF LABOR,

      Defendants.

No. 17-CV-5286 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Arvind Gupta, proceeding *pro se*, brings this action against Defendants Headstrong, Inc. and Genpact Limited (collectively, "Headstrong") for wages allegedly owed to him under the H-1B provisions of the Immigration and Nationality Act. Gupta also seeks judicial review, under the Administrative Procedure Act, of orders of the Department of Labor dismissing his administrative claims against Headstrong. This Court previously granted Headstrong's motion to dismiss the claims against it on the ground that those claims were barred by a settlement and release agreement entered into by Headstrong and Gupta in May of 2008. Gupta, with the Court's leave, has since amended his complaint. Before the Court is Headstrong's renewed motion to dismiss the Amended Complaint, the Secretary of Labor's motion for summary judgment, and Gupta's motion for partial summary judgment. For the reasons that follow, the motions of Headstrong and the Secretary are granted and Gupta's motion is denied.

## BACKGROUND

The Court assumes familiarity with the factual background of this case, which is summarized in the Court's prior decision on Headstrong's first motion to dismiss. *See Gupta v.*

*Headstrong, Inc.*, 17-CV-5286 (RA), 2018 WL 1634870 (S.D.N.Y. Mar. 30, 2018). The Court here provides a brief overview of the factual and procedural background that is relevant to the instant motions.[1]

In early 2006, Headstrong hired Gupta, a citizen of India, to work in the United States pursuant to an H-1B visa. The H-1B visa program permits non-immigrant foreign workers to work temporarily in the United States in "specialty occupation[s]." 8 U.S.C. §§ 1101(a)(15)(H)(i)(b), 1182(n). Headstrong filed a Labor Condition Application ("LCA") with the Department of Labor ("DOL"), and United States Citizenship and Immigration Services ("USCIS") approved Gupta's H-1B petition for a period of authorized employment running from April 24, 2006 until November 8, 2007. Under the INA, an employer who hires a non-immigrant foreign worker pursuant to an H-1B visa is obligated to pay that employee a stipulated wage rate, which is specified in the LCA, for the entire period of authorized employment. 20 C.F.R. § 655.730(d); *see* 8 U.S.C. § 1182(n)(1)(A), (2)(C)(vii)(I). This wage obligation applies even for periods of "nonproductive" time "due to a decision by the employer," though it does not apply if the employer effects a "bona fide termination" of the employee. 8 U.S.C. § 1182(n)(2)(C)(vii)(I), (IV); 20 C.F.R. 655.731(c)(7)(i), (ii).

On November 14, 2006, Headstrong notified Gupta that he would be terminated and, after November 28, 2006, it did not assign him any further work. In December of 2006, Headstrong and Gupta entered into a severance agreement. Then, in April of 2008, Gupta, who was counseled at the time, sent Headstrong a request for payment of further wages allegedly owed to him for the period of his authorized employment. In May of 2008, Gupta and Headstrong entered into a settlement and release agreement (the "May 2008 Agreement" or the "Agreement"), which was

---

[1] Unless otherwise noted, the factual background is taken from the Amended Complaint.

notarized and signed by both parties. AR 1258–63. Pursuant to the Agreement, Headstrong agreed to pay Gupta a lump sum payment of $7,000. AR 1258. In addition, Gupta and Headstrong agreed to a comprehensive mutual release of claims. Pursuant to this release, Gupta agreed to "release and forever discharge" Headstrong "of and from all . . . suits, actions, causes of actions, charges, complaints, grievances, judgments, damages . . . which [he] ever had, now ha[s], or which may arise in the future, regarding any matter arising on or before the date of [his] execution of" the Agreement. AR 1258–59. In February of 2010, Gupta sent Headstrong an email purporting to rescind the May 2008 Agreement.

After entering into the Agreement, Gupta filed a complaint with the DOL alleging that Headstrong had failed to pay him wages owed during the period of his authorized employment. After several years of back-and-forth within the DOL, and the resolution of a separate action filed in this Court,[2] an Administrative Law Judge ("ALJ") issued a 40-page decision and order addressing Gupta's claims. Am Compl. Ex. 4 at 2–41. As relevant here, the ALJ determined that the applicable period of Gupta's authorized employment with Headstrong was April 24, 2006 until November 8, 2007, and that Headstrong had effected a bona fide termination of Gupta on February 2, 2007. The ALJ thus concluded that Headstrong was obligated to pay Gupta wages through February 2, 2007, even though Gupta had stopped working for Headstrong on November 28, 2006. The ALJ calculated the back wages Headstrong owed to Gupta, and subtracted the approximately $8,000 that Headstrong had already paid Gupta pursuant to the December 2006 severance agreement. Accordingly, the ALJ concluded that Headstrong's back wage obligation to Gupta was approximately $11,500. The ALJ then considered the May 2008 Agreement. It concluded that

---

[2] Gupta filed that action in August of 2012. *See Gupta v. Headstrong, Inc.*, 12-CV-6652. In December of 2012, Gupta and the DOL entered into a stipulation and order of remand, in which the DOL agreed to reconsider Gupta's administrative claims. *See* Dkt. 23. Headstrong, which was not a party to that stipulation, filed a motion to dismiss the complaint, which the Court granted without prejudice in August of 2013. *See Gupta v. Headstrong, Inc.*, 12-CV-6652 (RA), 2013 WL 4710388, at *4 (S.D.N.Y. Aug. 30, 2013).

Gupta's allegations of fraud had no merit, and that Headstrong's "obligation to pay back wages, or benefits, or travel expenses of any kind, was completely extinguished by [Gupta's] execution of the settlement agreement and release, and the concomitant payment of $7,000.00." *Id.* at 39. The ALJ further noted that although the $7,000 lump sum payment was less than the $11,500 owed to Gupta, the settlement amount "represent[ed] a reasonable compromise" and was paid to Gupta within 45 days of his attorney's demand letter. *Id.* at 39 n.60. Accordingly, the ALJ concluded that Headstrong did "not currently owe any back wages, or any other amount of money," to Gupta. *Id.* at 41.

On January 26, 2017, the ARB affirmed the decision and order of the ALJ, finding that "the extensive evidentiary record amply supports the ALJ's factual findings, including her determination that the parties' settlement and release of claims extinguished all claims against Headstrong." Am. Compl. Ex. 2 at 4. While declining to address Gupta's "collateral attacks" to the May 2008 Agreement, the ARB noted that the Agreement was "facially valid" and upheld the ALJ's decision as "consistent with ARB precedent." *Id.* On February 14, 2017, the ARB denied Gupta's motion for reconsideration.

On March 16, 2017, Gupta commenced this action in the Northern District of Illinois. His complaint principally alleged that Headstrong had breached its employment agreement with Gupta by failing to pay him all the wages it owed to him, and that the Secretary of Labor had erred in dismissing Gupta's claims. The case was transferred to this Court in July of 2017. The Secretary of Labor answered the complaint and Headstrong filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). On March 30, 2018, this Court granted Headstrong's motion, holding that the May 2008 Agreement was valid and barred Gupta's claims. The Court granted Gupta leave to amend, while instructing him that his amended allegations "would need to

adequately allege both why the agreement is voidable, and why his retention of the lump-sum payment for the past ten years did not ratify it." *Gupta*, 2018 WL 1634870, at *5.

On June 25, 2018, Gupta filed the Amended Complaint, which is the operative complaint in this action. The Amended Complaint asserts six claims solely against Headstrong, and an additional 14 claims jointly against Headstrong and the Secretary.[3] The Secretary answered the Amended Complaint, while Headstrong informed the Court that it would rely on its previously-filed motion to dismiss. Gupta then filed a motion for partial summary judgment. Headstrong filed a request, which the Court granted, to stay Gupta's summary judgment motion as it pertained to Headstrong pending the resolution of its motion to dismiss. The Secretary, meanwhile, opposed Gutpa's motion and cross-moved for summary judgment on all of Gupta's claims against the Secretary.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[3] The causes of action are as follows: (1) Count 1: Breach of employment contract (for the period 11/28/2006 to 11/08/2007); (2) Count 2: Breach of employment contract (for the period 11/09/2007 to 03/16/2009); (3) Count 3: Breach of employment contract (after 3/17/2009 or 11/09/2007); (4) Count 4: Breach of implied in fact contract (after November 27, 2006); (5) Count 5: Unjust enrichment / quantum meruit (for period after November 27, 2006); (6) Count 6: Promissory estoppel (for period after November 27, 2006); (7) Count 7: Required wages for the period 11/28/2006 to 11/08/2007; (8) Count 8: Required wages for the period 11/09/2007 to 03/16/2009; (9) Count 9: Required wages for the period after 03/17/2009; (10) Count 10: Headstrong's liability for payment of unpaid benefits; (11) Count 11: Payment of living expenses; (12) Count 12: Retaliation for protected activity; (13) Count 13: Compensatory damages; (14) Count 14: Punitive damages; (15) Count 15: Payment of back wages by Headstrong per administrator's determination; (16) Count 16: Payment of back wages by Headstrong per ALJ; (17) Count 17: Review of ALJ decision and order in ALJ Case No. 2014-LCA-008 dated January 21, 2015 and intermediate orders; (18) Count 18: Whether the agency has jurisdiction to approve, adopt or enforce private agreements in violation of federal law; (19) Count 19: Whether the ALJ (and ARB)'s dismissal of Gupta's INA claims before the agency based on an alleged private settlement agreement that was later rescinded by Gupta is procedurally and constitutionally valid; (20) Count 20: The May 2008 settlement agreement is voidable (or void), invalid, and/or unenforceable.

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). "Where, as here, the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments it suggests." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014).

The Court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod*, 653 F.3d at 164. When "a party seeks judicial review of agency action, summary judgment is appropriate, since whether an agency action is supported by the administrative record and consistent with the APA standard of review is decided as a matter of law." *Residents for Sane Trash Solutions, Inc. v. U.S. Army Corps of Eng'rs*, 31 F. Supp. 3d 571, 586 (S.D.N.Y. 2014) (internal quotation marks omitted).

## DISCUSSION

Headstrong moves to dismiss the Amended Complaint on the ground that, as before, Gupta's claims against Headstrong are barred by the May 2008 Agreement. The Secretary contends that, in light of that Agreement, the DOL properly dismissed Gutpa's administrative claims and the Court should therefore grant summary judgment in favor of the Secretary. The Court first addresses Headstrong's motion to dismiss and then addresses the cross-motions for summary judgment from Gupta and the Secretary.[4]

---

[4] In June of 2019, Gupta filed a letter motion requesting that the Court stay or defer decision on the Secretary's motion for summary judgment, pending resolution of Headstrong's motion to dismiss. *See* Dkt. 132. The Court agrees that it is appropriate to resolve Headstrong's motion before deciding the cross-motions for summary judgment. Accordingly, the Court proceeds to resolve the motions in the sequence that Gutpa requested.

## I. Headstrong's Motion to Dismiss

Headstrong argues that the Amended Complaint must be dismissed for the same reasons the Court dismissed the original complaint in this action. The Court agrees. In its prior order dismissing the original complaint, the Court held that the May 2008 Agreement was valid and enforceable, and that it barred Gupta's claims. The same is true of the Amended Complaint.

Under New York law, "a valid release constitutes a complete bar to an action on a claim which is the subject of the release."[5] *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011). "It is appropriate to grant a motion to dismiss on the basis of a binding release agreement where . . . the terms of the agreement are clear and unambiguous." *2 Broadway LLC v. Credit Suisse First Boston Mortg. Capital LLC*, 00-CV-5773 (GEL), 2001 WL 410074, at *6 (S.D.N.Y. April 23, 2001). Here, as the Court previously held, the release of claims in the May 2008 Agreement is clear and unambiguous. By signing it, Gupta "release[d] and forever discharge[d]" Headstrong "of and from all . . . suits, actions, causes of actions, charges, complaints, grievances, judgments, damages . . . which [he] ever had, now ha[s], or which may arise in the future, regarding any matter arising on or before the date of [his] execution of" the Agreement.[6] The release, which Gupta undisputedly entered into while represented by counsel, thus unambiguously bars Gupta's claims against Headstrong, which all concern matters that arose prior to the signing of the Agreement in May of 2008.[7]

---

[5] The Agreement contains the following choice of law provision: "This Agreement and Release is entered into in the State of New York, and the laws of the State of New York will apply to any dispute concerning it, excluding the conflict-of-law principles thereof." AR 1262.

[6] As discussed in the Court's prior opinion, *see Gupta*, 2018 WL 1634870, at *2, the Court may consider the May 2008 Agreement, because the document is integral to the Amended Complaint and it is "clear that there exist no material disputed issues of fact regarding the [document's] relevance," authenticity, or accuracy. *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

[7] Gupta argues that some of his claims concern matters that arose after the execution of the May 2008 Agreement. He appears to be referring to Counts 2, 3, 8, and 9 of the Amended Complaint, which allege that Headstrong owed Gupta wages for the period from November 9, 2007 through March 17, 2009. As the Court noted in its prior opinion, however, it is clear from the Amended Complaint that Gupta's claims all arise out of employment agreements entered into prior to May 2008. *Gupta*, 2018 WL 1634870, at *3 n.4. Moreover, to the extent that any of

7

Gupta argues that the Court should nevertheless invalidate the release because it was unconscionable, lacked consideration, and was entered into under circumstances constituting fraud, mistake, and economic duress. *See Centro Empresarial Cempresa S.A.*, 17 N.Y.3d at 276 ("A release may be invalidated . . . for any of 'the traditional bases for setting aside written agreements, namely, duress, illegality, fraud, or mutual mistake.'"). The Court disagrees.

"Although a defendant has the initial burden of establishing that it has been released from any claims, a signed release shifts the burden of going forward . . . to the [plaintiff] to show that there has been fraud, duress or some other fact which will be sufficient to void the release." *Id.* (internal quotation marks omitted). On a motion to dismiss, "[u]nless the [c]omplaint sufficiently states a claim to void the release agreement[] . . . [that] agreement[] [is] enforceable and compel[s] dismissal of all claims." *2 Broadway LLC*, 2001 WL 410074, at *7. Gupta's claims here fail because, as before, his allegations fail to state "the basic elements" of any cause "sufficient to void the release." *Centro Empresarial Cempresa S.A.*, 17 N.Y.3d at 276. Specifically, the Amended Complaint does not plausibly allege that the Agreement was unconscionable, because its terms were not "unreasonably favorable" to Headstrong, and Gupta—who was represented by counsel when he negotiated the settlement—did not "lack . . . meaningful choice" when he entered into it. *Walpert v. Jaffrey*, 127 F. Supp. 3d 105, 131–32 (S.D.N.Y. 2015). The Amended Complaint also does not adequately allege that the Agreement lacked consideration, because it is clear from both the Amended Complaint and the Agreement itself that the Agreement contained a bargained-for exchange—a $7,000 lump sum payment and a mutual release of claims. *See Lambertson v. Kerry*

---

Gupta's claims for breach of contract arose after May 2008, those claims fail on the merits, because both the Amended Complaint and the exhibits attached to it make clear that Headstrong was authorized to employ Gupta only until November 8, 2007. Am. Compl. at ¶¶ 3–4, Ex. 9 & 10. Gupta has thus failed to plausibly allege that Headstrong had any obligation to pay Gupta wages for any period of time following his release of claims in May of 2008. *See 2 Broadway LLC*, at *9 ("Plaintiff's conclusory allegations to the contrary are contradicted by the documents attached to the Complaint, and are therefore insufficient to defeat the motion to dismiss.").

8

*Ingredients, Inc.*, 50 F. Supp. 2d 163, 169 (E.D.N.Y. 1999) (holding that a "mutual release provides sufficient consideration to effectuate the [g]eneral [r]elease").

As to fraud and mistake, the Amended Complaint fails to plausibly allege either a misrepresentation, or a shared erroneous belief, as to a material fact. *See Centro Empresarial Cempresa S.A.*, 17 N.Y.3d at 276 ("A plaintiff seeking to invalidate a release due to fraudulent inducement must establish the basic elements of fraud, namely a representation of material fact, the falsity of that representation, knowledge by the party who made the representation that it was false when made, justifiable reliance by the plaintiff, and resulting injury.") (internal quotation marks omitted); *ACA Galleries, Inc. v. Kinney*, 928 F. Supp. 2d 699, 701 (S.D.N.Y. 2013) ("A mutual mistake under New York law means that both parties shared the same erroneous belief as to a material fact, and their acts did not in fact accomplish their mutual intent.") (internal quotation marks omitted). Gutpa alleges that Headstrong misrepresented—or, alternatively, mistakenly told him—that it had informed USCIS of Gupta's termination on January 15, 2007. But he explicitly references and relies on a letter that shows just the opposite. The letter—which was sent from Headstrong's Human Resources department to USCIS (and signed by the individual to whom USCIS addressed its approval of Gupta's H-1B petition)—informs USCIS that "Arvind Gupta is no longer employed with [our] company," and is dated January 15, 2007. Am. Compl. ¶¶ 256, 257, 261 (citing AR 1251); *See Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) (On a motion to dismiss, "a court may consider documents attached to the complaint as exhibits, or incorporated by reference, as well as any documents that are integral to, or explicitly referenced in, the pleading."). The letter also specifically references the unique receipt number associated with Headstrong's approved H-1B petition on behalf of Gupta. AR 1251; *see* Am. Compl. Ex. 10. Gupta nevertheless contends that Headstrong's representation was false, because the notification contains alleged technical errors—referencing only the most recent receipt number

9

associated with his employment, and identifying his employer as "Headstrong Services LLC," instead of "Headstrong, Inc." Given, however, that the notification letter expressly identifies Gupta by name, references the receipt number uniquely associated with Gupta's employment at Headstrong, and is signed by the same Headstrong employee who was identified on USCIS's approval of Gupta's H-1B petition, these alleged technical errors do not allow the Court to draw any reasonable inference that Headstrong falsely represented the date on which it had informed USCIS of Gupta's termination. Since the notification letter is explicitly referenced in the Amended Complaint, and directly contradicts Gupta's allegations of fraud and mistake, those allegations are insufficient to survive Headstrong's motion to dismiss. *Matusovsky*, 186 F. Supp. 2d at 400 ("If a plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss.").

Finally, the Amended Complaint fails to plausibly allege that the Agreement must be invalidated due to economic duress. "To void a contract on the ground of economic duress, the complaining party must show that its agreement was procured by means of (1) a wrongful threat that (2) precluded the exercise of [his] free will." *Interpharm, Inc. v. Wells Fargo Bank, N.A.*, 655 F.3d 136, 142 (2d Cir. 2011). This principle "extends no further than equity demands" and "a mere demonstration of financial pressure or unequal bargaining power" is not, by itself, enough. *Id.* Moreover, although a release induced by duress is voidable, "the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir. 2001). "A party who executes a contract under duress and then acquiesces in the contract for any considerable length of time, ratifies the contract." *Sheindlin v. Sheindlin*, 88 A.D.2d 930, 931 (2d Dep't 1982). "Delays as short as six months have been held to constitute forfeiture of the claim." *VKK Corp.*, 244 F.3d at 122.

Here, not only does the Amended Complaint fail to allege more than "mere . . . financial pressure," it also makes clear that Gupta did not attempt to repudiate the Agreement until February of 2010—approximately 21 months after signing it. In addition, Gupta never returned the $7,000 lump sum payment that he received pursuant to the Agreement. *Nicomedez v. AIG*, No. 12-CV-490 (KBF), 2012 WL 5264560, at *4 (S.D.N.Y. Oct. 16, 2012) ("It is well established that where money paid as consideration for a release acquired by fraud or duress is retained after the releaser becomes aware of the fraud or the duress is removed, ratification may be found."). Under such circumstances, Gupta's belated contention that he was forced to sign the Agreement under economic duress is insufficient as a matter of law. *See VKK Corp.*, 244 F.3d at 123 ("Because an element of economic duress is thus present when many contracts are formed or releases given, the ability of a party to disown his obligations under a contract or release on that basis is reserved for extreme and extraordinary cases.").

The Court thus finds that the May 2008 Agreement unambiguously released the claims that Gupta asserts against Headstrong in this case. The Amended Complaint, like the original complaint, furnishes no basis to invalidate that Agreement.[8] Headstrong's motion to dismiss the Amended Complaint is, accordingly, granted.

---

[8] In addition to the allegations just discussed, Gupta also alleges that the May 2008 Agreement is invalid because it violates the INA and is preempted by federal law. Neither the INA nor its implementing regulations, however, precludes an employee from settling his H-1B claims. *See Talukdar v. Dep't of Veterans Affairs*, ARB No. 04-100, 2007 WL 352434, at *2 (ARB Jan. 31, 2007) ("[T]he INA and its implementing regulations contain no suggestion that we should refrain from exercising our dismissal authority . . . If Congress had intended a drastic juridical rule disallowing dismissal due to settlement, then Congress would have stated it.") (internal quotation marks omitted). Indeed, such claims before the DOL appear to settle routinely. *See* LCA Decisions, Office of Administrative Law Judges, United States Department of Labor. Available at https://www.oalj.dol.gov/PUBLIC/INA/REFERENCES/CASELISTS/LCA_DECISIONS.HTM. As to conflict preemption, that doctrine applies "where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives." *Figueroa v. Foster*, 864 F.3d 222, 228 (2d Cir. 2017). Since this case does not involve any conflict between federal law and local law, conflict preemption is inapplicable. Finally, Gupta also argues that Headstrong is precluded from relying on the Agreement because it failed to bring it to the attention of the DOL. This argument is without merit, as the documents explicitly referred to in the Amended Complaint clearly demonstrate that Headstrong did produce the Agreement to the DOL and that the DOL considered it. *See* Am. Compl. at ¶ 191 (citing AR 1476); Am. Compl. Exs. 2 & 3.

## II. Gupta and the Secretary's Motions for Summary Judgment

Gupta also seeks judicial review, under the Administrative Procedure Act ("APA"), of the DOL's decisions dismissing his administrative claims against Headstrong. The Secretary moves for summary judgment on all claims, arguing that the agency's decisions were supported by substantial evidence and not arbitrary, capricious, or contrary to law. The Court agrees.

Under the APA, "[a] person suffering legal wrong because of agency action . . . is entitled to judicial review thereof." 5 U.S.C. §702. The right to judicial review applies to "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. §704. Legal conclusions of the agency are reviewed *de novo*. 5 U.S.C. § 706 ("the reviewing court shall decide all relevant questions of law"); *J. Andrew Lange, Inc. v. F.A.A.*, 208 F.3d 389, 391 (2d Cir. 2000). As to other agency findings, a reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "[A]gency action is arbitrary and capricious 'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Natural Res. Def. Council v. U.S. E.P.A.*, 658 F.3d 200, 215 (2d Cir. 2011) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "Additionally, courts will not disturb a factual finding if it is supported by reasonable, substantial, and probative evidence in the record when considered as a whole." *Glara Fashion, Inc. v. Holder*, 11-CV-889 (PAE), 2012 WL 352309, at *6 (S.D.N.Y. Feb. 3, 2012) (internal quotation marks omitted).

The DOL's actions here were supported by substantial evidence and neither arbitrary, capricious, nor contrary to law. After holding a hearing, which Gupta attended in person, the ALJ issued a detailed decision concluding that the parties had settled Headstrong's wage obligation, and released Gupta's claims, by executing the May 2008 Agreement. The ARB affirmed the ALJ's decision, noting that the Agreement was facially valid and declining to adjudicate Gupta's collateral attacks to it. As explained above, this Court has determined that the May 2008 Agreement was valid and enforceable, and that Gupta's collateral attacks to it—including on grounds of unconscionability, fraud, and duress—are meritless. In light of that holding, the DOL properly concluded—as has the Court—that the Agreement "extinguished all claims against Headstrong." AR 1614. The Secretary is thus entitled to summary judgment on all of Gupta's claims, and Gupta's motion for partial summary judgment must be therefore be denied.

## CONCLUSION

For the foregoing reasons, Headstrong's motion to dismiss and the Secretary's motion for summary judgment are granted. Gupta's motion for partial summary judgment is denied. Gupta's request for leave to file a motion for U-visa certification is also denied. *See* Dkt. 54, Case No. 12-CV-6652 (RA) (denying Gupta's prior motion for U-visa certification "without prejudice to renew if Plaintiff's claims survive [Headstrong's] motion to dismiss."). The Clerk of Court is respectfully directed to mail a copy of this opinion to Gupta and to close this case.

SO ORDERED.

Dated: September 9, 2019
New York, New York

Ronnie Abrams
United States District Judge

13